IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOE HUNSINGER, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Case No. 3:22-cv-00136-G-BT |
| | § | |
| DYNATA LLC, | § | |
| | § | |
| Defendant. | § | |

## FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

Before the Court is Defendant Dynata, LLC's Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 20). For the following reasons, the Court should **GRANT** Dynata's Motion and **DISMISS** Hunsinger's amended complaint.

### Background

Plaintiff Joe Hunsinger brings this *pro se* civil action alleging violations of the Telephone Consumer Protection Act (TCPA), violations of the Texas Business and Commerce Code (TBCC), and claims for intentional intrusion on solitude, seclusion, and private affairs.[1] He also seeks treble damages for willful and knowing violations of the TCPA and TBCC.

---

[1] Although Hunsinger is proceeding *pro se*, he is no stranger to this Court. Indeed, as another judge in this district recently noted, Hunsinger "has filed more than fifty cases in the Northern District of Texas over the last ten years, and more than forty of those were filed within the last eighteen months." *Hunsinger v. Offer, LLC*, 2022 WL 18143951, at *9 (N.D. Tex. Dec. 7, 2022) (Ramirez, J.), *adopted by* 2023 WL 122649 (N.D. Tex. Jan. 6, 2023) (Godbey, C.J.). Almost all of his recent cases

In his amended complaint, Hunsinger alleges that he registered his phone number on the national do-not-call (DNC) registry list. Am. Compl. 6 (ECF No. 17). However, on September 21, 2021, Hunsinger received a single call from an "unidentified caller" to his DNC-registered phone number. Am. Compl. 10. When Hunsinger answered, "[i]t took several seconds for the caller to pick up the line." Am. Compl. 10. Hunsinger alleges the brief delay indicates the caller used a "predictive dialer" or an automated telephone dialing system (ATDS) to place the call. Am. Compl. 10.

Hunsinger asked the caller to identify themselves, but the caller only told Hunsinger to "go to Dynata.com." Am. Compl. 10. According to Hunsinger, Dynata is a survey and marketing business which makes "survey cold calls on behalf of itself and [its] customers to increase brand awareness." Am. Compl. 10-11; *see* Mot. Dismiss 16 (ECF No. 20). Hunsinger claims that the September 21 caller "was an agent of Defendant Dynata" and that "Dynata has an agreement with the caller and compensates the caller for their time." Am. Compl. 10. He further states that the caller "directly made the call using Dynata's phone number." Am. Compl. 10.

Thereafter, Hunsinger sent Dynata a certified letter requesting a copy of Dynata's DNC policy. Am. Compl. 11. Dynata allegedly responded with a letter

---

involve alleged violations of the TCPA and the TBCC for unwanted calls or texts to his cell phone. *See, e.g., id.*; *Hunsinger v. 204S6TH LLC*, 2022 WL 1110354 (N.D. Tex. Mar. 23, 2022) (Ramirez, J.), *adopted by* 2022 WL 1102864 (Apr. 13, 2022) (Fish, J.); *Hunsinger v. Alpha Cash Buyers, LLC* (*Alpha Cash Buyers II*), 2022 WL 562761 (N.D. Tex. Feb. 24, 2022) (Fitzwater, J.).

asserting its immunity from the TCPA and the TCPA's penalties and further advising Hunsinger that other people sometimes "spoof" Dynata's phone numbers.[2] Am. Compl. 11. Dynata never sent Hunsinger a copy of its DNC policy. Am. Compl. 11, 12.

Based on this conduct, Hunsinger filed the pending lawsuit alleging that Dynata violated the TCPA, the TBCC, and his common law right to privacy. *See generally* Compl. (ECF No. 1). After Dynata filed a motion to dismiss and that motion had been fully briefed, Hunsinger—with Dynata's consent and leave of court—amended his complaint.

In addition to Hunsinger's initial claims, the amended complaint alleges that, on June 3, 2022—after Hunsinger advised Dynata to put his phone number on its "internal DNC list," Hunsinger received a text message from a Short Messaging Service (SMS) short code[3] that included a link to a website that is allegedly affiliated with Dynata. Am. Compl. 13. Hunsinger replied to the message but received an automated response to his request for information from the

---

[2] The term "spoofing" refers to a process in which a caller obscures the telephone number from which a call originates and replaces it with a different, "spoofed" number so the Caller ID system will interpret the call as originating from the "spoofed" number. *Sw. Bell Tel. Co. v. Iverson*, 2012 WL 652040, at *1 n.1 (N.D. Tex. Feb. 6, 2012), *adopted by* 2012 WL 676283 (N.D. Tex. Feb. 29, 2012).

[3] SMS short codes are "four to six digit telephone number[s] used only for texting, and most frequently for commercial marketing purposes." *Hunsinger v. Alpha Cash Buyers, LLC* (*Alpha Cash Buyers I*), 2021 WL 5040228, at *1 n.3 (N.D. Tex. Oct. 29, 2021).

number and to his response "Stop.", until he responded with the term "Stop".[4] Am. Compl. 13-14. During the exchange, Hunsinger asked the sender to identify themselves, but did not receive any response. Am. Compl. 13.

Hunsinger's amended complaint alleges that Dynata's purported call and text violated certain provisions of the TCPA and its implementing regulations, as well as section 305.053 of the TBCC, which grants a state law private right of action for violations of the TCPA, by contacting him twice in twelve months on a registered DNC number using an ATDS and by failing to implement a written policy for maintaining a list of persons who request not to receive telemarketing calls. Am. Compl. 22-25 (Counts I-VI, asserting violations of 47 U.S.C. § 227(b) and (c) and of 47 C.F.R. § 64.1200(a), (c) and (d)). Hunsinger further alleges that Dynata's actions also constitute a violation of the common law right to privacy based on intrusion on seclusion. Am. Compl. 24 (Count VII). By this lawsuit, he seeks damages and injunctive relief.

Dynata moves to dismiss Hunsinger's amended complaint under Rule 12(b)(6) and 12(b)(1). Dynata's principal argument is that Hunsinger fails to allege sufficient facts to support the essential elements of a claim under the TCPA §§ 227(b) or (c); that is, Hunsinger does not plead that the alleged illegal call or text was a "telephone solicitation" or that an ATDS was used to make the call or text.

---

[4] The period outside of the quotation marks is intentional, as Hunsinger also states that he received an automated response to which his response "Stop." was not recognized. Only when he responded with "Stop", omitting the period, did he receive a response recognized by the short code number. Am. Compl. 14.

Mot. Dismiss 15-19 (ECF No. 20). Dynata further argues that Hunsinger fails to plead facts sufficient to establish that Dynata is either directly or vicariously liable for any TCPA violation. Mot. Dismiss 20-25. Dynata also argues Hunsinger's allegations are too conclusory to state a claim under the TBCC or his state law tort claims. Mot. Dismiss 24-26. Finally, Dynata argues Hunsinger failed to plead sufficient facts to show he has Article III standing, because he failed to plead sufficient facts tracing his purported injuries to only Dynata or to explain how relief from Dynata will redress alleged injuries caused by unidentified third parties. Mot. Dismiss 28-29. Hunsinger filed a response. Pl.'s Resp. (ECF No. 21). Dynata did not file a reply, and the time for doing so has passed. *See* N.D. Tex. Loc. Civ. R. 7.1(f) ("[A] party who has filed an opposed motion may file a reply brief within 14 days from the date the response is filed."). The motion is thus ripe for determination.

## Legal Standards

### I.      Rule 12(b)(6)

When deciding a 12(b)(6) motion to dismiss for failure to state a claim, the Court "accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and citations omitted). To survive a Rule 12(b)(6) motion, therefore, a plaintiff's complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "To be plausible, the complaint's '[f]actual

allegations must be enough to raise a right to relief above the speculative level.'" *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 210 (5th Cir. 2010) (quoting *Twombly*, 550 U.S. at 555).

This pleading standard does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 555). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (citing *Twombly*, 550 U.S. at 556). "[A] formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Where the facts do not permit the Court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the plaintiff is plausibly entitled to relief. *Id*. at 678 (citing *Twombly*, 550 U.S. at 557).

## II.    Rule 12(b)(1)

A motion to dismiss under Rule 12(b)(1) challenges a federal court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "Standing to sue is part of the common understanding of what it takes to make a justiciable case." *Steel Co.*, 523 U.S. at 102 (citing *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)). The "irreducible constitutional minimum of standing" includes three elements: "First, the plaintiff

6

must have suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted). Second, the injury must be causally connected to the complained-of conduct; in other words, it must be "'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)) (brackets in original). And third, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

"[W]here issues of fact are central both to subject matter jurisdiction and the claim on the merits, [the Fifth Circuit holds] that the trial court must assume jurisdiction and proceed to the merits." *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004). "In circumstances where 'the defendant's challenge to the court's jurisdiction is also a challenge to the existence of a federal cause of action, the proper court of action for the district court . . . is to find that jurisdiction exists and deal with the objection as a direct attack on the merits of the plaintiff's case' under either Rule 12(b)(6) or Rule 56." *Id.* (citing *Williamson v. Tucker*, 645 F.2d 404, 415 (5th Cir. 1981)). "Judicial economy is best promoted when the existence of a federal right is directly reached and, where no claim is found to exist, the case is dismissed on the merits." *Williamson*, 645 F.2d at 415.

When, as here, a party files a Rule 12(b)(1) motion in conjunction with other Rule 12 motions, the court should consider the jurisdictional challenge before addressing any attack on the merits. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam) (citation omitted).

## Analysis

### I.    Standing

With respect to his claims arising out of the alleged September 21, 2021 call and the June 3, 2022 text, Dynata disputes that Hunsinger has sufficiently pleaded the second and third elements of constitutional standing: traceability and redressability.[5] More particularly, Dynata argues that Hunsinger has failed to allege any facts showing either that the alleged wrongful conduct was attributable only to Dynata—as opposed to third parties—or that "Dynata had any relationship with any responsible third party." Mot. Dismiss 28.

Courts reviewing TCPA claims have noted that certain 12(b)(1) challenges relate directly to the analysis of whether a plaintiff states a claim, and they have analyzed these challenges under a Rule 12(b)(6) standard. *See Clark v. Avatar Techs. Phl, Inc.*, 2014 WL 309079, at *1-4 (S.D. Tex. Jan. 28, 2014); *see also Hicks v. Alarm.com Inc.*, 2020 WL 9261758, at *5 (E.D. Va. Aug. 6, 2020) ("Based on the

---

[5] Although Dynata does not concede that Hunsinger suffered a concrete and particularized injury-in-fact sufficient for Article III standing purposes, it fails to make any specific argument that Hunsinger cannot satisfy that requirement. Mot. Dismiss 11 n.3. Thus, the Court limits its analysis to the arguments Dynata briefed and of which Hunsinger had notice and an opportunity to respond.

deficiencies identified under Rule 12(b)(6), Plaintiff also fails to properly plead causation and redressability."). Because the existence of an agency relationship intertwines inquiries of redressability and traceability required for standing and a central aspect of any TCPA claim, the Court should assume jurisdiction and treat the attack as one on the merits of the claim under Rule 12(b)(6). *See Montez*, 392 F.3d at 150.

### II.     TCPA Claims

Dynata challenges the sufficiency of Hunsinger's amended complaint with respect to the alleged TCPA violations, arguing that Hunsinger fails to adequately plead facts to show (i) the September 21, 2021 call and the June 3, 2022 text are "telephone solicitations" covered by the TCPA, (ii) Dynata used an ATDS to make the call or the text, (iii) Dynata directly placed the call or the text or had an agency relationship with the entity that did, and (iv) Dynata is required to have minimum procedures in place for a DNC registry because they are making telephone solicitation calls. Mot. Dismiss 15-26.

The TCPA contains two distinct sections that grant individuals a private right of action. Under § 227(b), the TCPA regulates various telecommunications devices and prohibits the use of certain technologies for calling several types of end-users without an emergency purpose or prior express consent of the called party. *Mims v. Arrow Fin. Svcs., LLC*, 565 U.S. 368, 373 (2012); *see* 47 U.S.C. § 227(b). The Supreme Court has succinctly outlined the four prohibited practices:

> First, the Act makes it unlawful to use an automatic telephone dialing system or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any emergency telephone line, hospital patient, pager, cellular telephone, or other service for which the receiver is charged for the call. *See* 47 U.S.C. § 227(b)(1)(A). Second, the TCPA forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent. § 227(b)(1)(B). Third, the Act proscribes sending unsolicited advertisements to fax machines. § 227(b)(1)(C). Fourth, it bans using automatic telephone dialing systems to engage two or more of a business' telephone lines simultaneously. § 227(b)(1)(D).

*Mims*, 565 U.S. at 373. The TCPA grants a private right of action to individuals "based on a violation of [§ 227(b)] or the regulations prescribed under [§ 227(b)]." 47 U.S.C. § 227(b)(3). Even one instance of a violation of § 227(b) is actionable in the Fifth Circuit. *See Cranor v. 5 Star Nutrition, L.L.C.*, 998 F.3d 686, 689-91 (5th Cir. 2021).

Under § 227(c), the TCPA also delegates authority to the Federal Communications Commission (FCC) to promulgate regulations "to protect residential telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." 47 U.S.C. § 227(c). This subsection grants a private right of action to individuals "who ha[ve] received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under [§ 227(c)]." 47 U.S.C. § 227(c)(5). Unlike § 227(b), § 227(c) does not regulate automated technologies; rather, it regulates calling practices to protect rights of privacy of those registered on the DNC list.

A. <u>Hunsinger fails to sufficiently plead that Dynata may be directly or vicariously liable for any TCPA violation arising out of the September 21, 2021 call or the June 3, 2022 text.</u>

10

Dynata asserts that Hunsinger does not state a claim for any violation of the TCPA because Hunsinger fails to establish that Dynata is directly or vicariously liable for the alleged misconduct. According to Dynata, Hunsinger's "conclusory allegations and various legal buzzwords, without supporting facts," warrant dismissal. Mot. Dismiss 20-25.

"Theories of direct and vicarious liability are both cognizable under the TCPA." *Cunningham v. Politi*, 2019 WL 2519568, at *5 & n.11 (E.D. Tex. Apr. 30, 2019) (noting that the Supreme Court adopted an FCC ruling applying federal common law principles of agency to TCPA violations under a theory of vicarious liability). A plaintiff may use either theory to base a claim under § 227(b) or § 227(c). *See Cunningham v. Nationwide Sec. Sols., Inc.*, 2017 WL 10486988, at *2 (N.D. Tex. Nov. 2, 2017) (§ 227(b)); *204S6TH LLC*, 2022 WL 1110354, at *7 (§ 227(c)).

Under the TCPA, direct liability is found when an entity "initiates" a telephone call. *See In re Joint Petition filed by Dish Network, LLC*, 28 F.C.C. Rcd. at 6582 ¶ 24 (2013) ("[W]e clarify that a seller is not directly liable for a violation of the TCPA unless it initiates a call, but [the seller] may be held vicariously liable under federal common law agency principles for a TCPA violation by a third-party telemarketer."). "Initiating" a telephone call means that the entity "takes the steps necessary to physically place a telephone call." *Cunningham v. Lifestyles Dev., LLC*, 2019 WL 4282039, at *3 (E.D. Tex. Aug. 8, 2019).

An entity may also be vicariously liable for violations by third parties under the TCPA. "[A] defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship . . . between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014), *aff'd*, 136 S. Ct. 664 (2016); *see Politi*, 2019 WL 2519568, at *6. An agency relationship exists where a principal "manifests assent to [an agent] . . . that the agent shall act on the principal's behalf and subject to the principal's control." *Lifestyles Dev., LLC*, 2019 WL 4282039, at *4 (quoting Restatement (Third) of Agency § 1.01 (Am. L. Inst. 2006)). "Agency is typically a factual issue, with the plaintiff at the pleading stage only required to allege a factual basis that gives rise to the inference of an agency relationship through the use of generalized as opposed to evidentiary facts." *Politi*, 2019 WL 2519568, at *6 (quoting *Mauer v. Am. Intercontinental Uni., Inc.*, 2016 WL 4651395, at *2 (N.D. Ill. Sept. 7, 2016)). "Three theories of agency could support a claim for vicarious liability: (1) actual authority; (2) apparent authority; and (3) ratification." *Lifestyles Dev., LLC*, 2019 WL 4282039, at *4.

The amended complaint does not allege that Dynata itself initiated the September 21 call or sent Hunsinger a text on June 3. Instead, Hunsinger generally alleges—without any elaboration or specific factual support—that the September 21, 2021 caller" is an agent for Dynata," that Dynata has an agreement with the caller, and that Dynata compensates the caller for their time. Am. Compl. 10. These

allegations are wholly conclusory and represent nothing more than formulaic recitations of an agency relationship.

The amended complaint also states—again without any elaboration or specific factual support—that Dynata owns the phone number used to call him on September 21.[6] Am. Compl. 10. It further states that the September 21 caller told Hunsinger "to go to Dynata.com" and that the link Hunsinger received in the June 3, 2022 text message sent him to a Dynata-affiliated website. Am. Compl. 10, 13. But these alleged facts are still not sufficient to permit the Court to infer the call or the text was initiated by an entity acting with any authority—either actual or apparent—from Dynata. And the amended complaint does not plead any facts to support an allegation that Dynata ratified the call or the text. Indeed, on the facts alleged, the Court cannot infer that any unidentified third party acted with actual authority as Dynata's agent and called or texted Hunsinger, that any unidentified third party sent Hunsinger a message with apparent authority from Dynata, or that any unidentified third party sent Hunsinger a message and Dynata ratified those

---

[6] Hunsinger asserts, in his response to the motion to dismiss, that he called the phone number back, and that it was received by a Dynata office. Pl.'s Resp. 7 (ECF No. 21). However, responses to a Motion to Dismiss are not considered as part of the pleadings and the Court thus does not consider this alleged fact in its analysis of whether an agency relationship exists. *See United States ex rel. Grynberg Prod. Corp. v. Kinder Morgan CO2 Co., L.P.*, 491 F. Supp. 3d 220, 231 (N.D. Tex. Sept. 30, 2020) (noting that a party "may not amend its Complaint through its response to Defendant's motion to dismiss") (citation omitted). Even if the Court were to consider this alleged fact or Hunsinger is allowed to amend his complaint to include it, any amendment would be futile as he fails to state any usage of an ATDS for either a § 227(b) or 47 C.F.R. § 64.1200(a)(1)(iii) claim relating to the telephone call.

actions. A sheer possibility that a third party—on Dynata's behalf—initiated a call or a text to Hunsinger does not establish an agency relationship sufficient to state a claim under the TCPA. *See Horton v. Nat'l Republican Senatorial Comm.*, 2023 WL 372066, at *5 (N.D. Tex. Jan. 23, 2023) (finding similar allegations "fail[ed] to plead more than conclusions and formulaic recitations of vicarious liability"). The Court should dismiss Hunsinger's TCPA and state law claims arising out of the alleged September 21, 2021 call and the June 3, 2022 text under Rule 12(b)(6).

>   B. <u>Additionally, even assuming the facts alleged are sufficient to plead the September 21, 2021 caller was Dynata's agent, Hunsinger fails to plead a violation of 47 C.F.R. § 64.1200(a)(1) with respect to the September 21 phone call.</u>

In Count I of the Complaint, Hunsinger alleges a violation of 47 C.F.R. § 64.1200(a)(1), which reflects the language of 47 U.S.C. § 227(b) and regulates the use of automated telephonic technology to place calls. Dynata moves to dismiss these claims, asserting that Hunsinger fails to adequately plead facts to infer usage of an ATDS. Mot. Dismiss 17-19.

The TCPA and related FCC regulations prohibit any person or entity from using an ATDS or artificial or prerecorded voice to call "any telephone number assigned to a . . . cellular telephone service." 47 U.S.C. § 227(b)(1)(iii); 47 C.F.R. § 64.1200(a)(1)(iii). The TCPA defines "automatic telephone dialing system" as "equipment which has the capacity [] to store or produce telephone numbers to be called, using a random or sequential number generator; and to dial such numbers. 47 U.S.C. § 227(a)(1). A "necessary feature" of an ATDS device is "the capacity to

use a random or sequential number generator to either store or produce phone numbers to be called." *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1173 (2021). For a plaintiff to succeed under an ATDS TCPA claim, a plaintiff must "allege that a call was made to a cell or wireless phone by the use of any automatic dialing system or an artificial or prerecorded voice and without prior express consent of the called party." *Cunningham v. TechStorm, LLC*, 2018 WL 3118400, at *3 (N.D. Tex. May 29, 2018), *adopted by* 2018 WL 3117529 (N.D. Tex. June 25, 2018). "A text message to a cellular telephone, it is undisputed, qualifies as a 'call' within the compass of § 227(b)(1)(A)(iii)." *Campbell-Ewald Co.*, 577 U.S. at 156.

A bare allegation of the usage of an ATDS, "without more, is insufficient to sustain a TCPA claim." *Nationwide Sec. Sols., Inc.*, 2017 WL 10486988, at *3. But "courts have noted the difficulty a plaintiff faces in knowing the type of calling system used without the benefit of discovery and found that courts can rely on details about the call to infer the use of an ATDS." *Id.* (quoting *Hickey v. Voxernet LLC*, 887 F. Supp. 2d 1125, 1129-30 (W.D. Wash. 2012)). "In light of this difficulty, courts have allowed plaintiffs to 'rely on indirect allegations, such as the content of the message, the context in which it was received, and the existence of similar messages to raise an inference that an ATDS was used." *Alpha Cash Buyers I,* 2021 WL 5040228, at *3 (quoting *Jones v. FMA All. Ltd.*, 978 F. Supp. 2d 84, 87 (D. Mass. 2013)).

Here, it is essential to distinguish between the phone call and the text message for the purposes of the ATDS TCPA claim. As to the phone call, the call

was from a long code phone number and, when the call connected, an unidentified person spoke to Hunsinger. Am. Compl. 10. Hunsinger's bare allegation that "the silence and then 'hearing a [live] person o[n] the other end signifies the algorithm of a predictive dialer in operation,'" without more, is mere speculation. Am. Compl. 10. Such a conclusory allegation does not support any inference that a random or sequential number generator was used. *See TechStorm, LLC*, 2018 WL 3118400, at *4 (noting that multiple playback errors, a prerecorded message, and dead airtime and clicking before the message was played may support an inference of an ATDS); *Watts v. Emergency Twenty Four, Inc.*, 2021 WL 2529613, at *3 (N.D. Ill. June 21, 2021) (holding that an ATDS TCPA is deficient where a plaintiff solely alleges a defendant used an ATDS and could call thousands of numbers). Therefore, any claim that the phone call uses an ATDS in violation of the TCPA should be dismissed.

C.    Hunsinger fails to plead a violation of 47 C.F.R. § 64.1200(c).

In Counts I and II of his amended complaint, Hunsinger alleges Dynata violated 47 C.F.R. § 64.1200(c)(2), which prohibits telephone solicitations to residential numbers on the national DNC registry, by calling him on September 21, 2021 call and texting him on June 3, 2022. Am. Compl. 10, 13. Dynata moves to dismiss these claims because Hunsinger failed to plead facts to show the allegedly improper contacts are "telephone solicitations" covered under the regulation. Mot. Dismiss 15-16.

The FCC regulations prohibit any person or entity from "initiat[ing] any *telephone solicitations* to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government." 47 C.F.R. § 64.1200(c)(2) (emphasis added). A "telephone solicitation" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4); *see* 47 C.F.R. § 64.1200(f)(15). A cause of action under this regulation is only available to individuals "who [have] received more than one telephone call within any 12-month period by or on behalf of the same entity." 47 U.S.C. § 227(c)(5).

Here, Hunsinger does not allege facts from which the Court can infer that either of the communications at issue was "for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." Hunsinger alleges that Dynata is a "survey and marketing business" and that it "makes survey cold calls on behalf of itself and their customers to increase brand awareness [sic] for their customers." Am. Compl. 10, 11. He alleges that on September 21, 2021, he received a call from a phone number allegedly associated with Dynata. Am. Compl. 10. He states that the caller refused to identify themselves and "told him to go to Dynata.com." Am. Compl. 10. On June 3, 2022, he allegedly received an SMS text with a link that took him to a Dynata survey. Am. Compl. 13. He does not allege any specific facts about the contents of the website or the survey. Significantly, he

does not allege that the call or the text, or that the website or the survey to which he was directed, asked or encouraged him to purchase, rent, or invest in any property, good, or service.

Furthermore, the FCC has explained that calls involving "surveys, market research, political or religious speech" do not fall within the definition of "telephone solicitation" and will not be precluded by registering a number on the national DNC list. *In re Rules & Regs. Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14040 (2003). While the FCC also stated that "[survey] calls may be prohibited if they serve as a pretext to an otherwise prohibited advertisement or means of establishing a business relationship," *id.* at 14040 n. 141, Hunsinger's bald allegations that Dynata engages in "commercial telemarketing calls" does nothing more than use conclusory language to attempt to state a claim. Am. Compl. 17. Because there is no factual basis in Hunsinger's amended complaint to show there was an attempted commercial transaction, the survey calls are not "telephone solicitations" prohibited by the TCPA.

Hunsinger attempts to salvage his claim by arguing that Dynata engages in marketing, branding, and advertising activities to *influence* consumer purchases, and that Dynata "paid to make the call to induce the Plaintiff and steer and/or influence his purchasing decisions." Pl.'s Resp. 9 (ECF No. 21). However, this argument finds no support in the facts alleged in his amended complaint. And even if he had made such an allegation, it would conflict with the FCC's promulgated guidance that market research calls are *not* telephone solicitations and do not

subject the calling entities to TCPA liability. *In re Rules & Regs.*, 18 F.C.C. Rcd. at 14040; *see Suttles v. Facebook, Inc.*, 461 F. Supp. 3d 479, 482-83 (W.D. Tex. May 20, 2020) ("[Plaintiff] has provided no caselaw, and the court is unaware of any, that has held that an invitation to visit a website—even one whose business model is centered around user data—may be converted into a telephone solicitation . . . ."). Hunsinger's attempted argument would render the FCC's guidance meaningless, as all market research could fall under his proposed "influence liability" theory and thus the FCC guidance would be unnecessary. Both the call and the text allegedly directed Hunsinger to visit dynata.com or to engage in a market survey. *See* Am. Compl. 10, 13. These communications are expressly outside the TCPA's purview. Therefore, the Court should dismiss Hunsinger's claims under 47 C.F.R. § 64.1200(c)(2). *Suttles*, 461 F. Supp. 3d at 482 (holding that to survive a motion to dismiss, plaintiff must allege facts that indicate the contacts at issue were for the purpose prohibited by the regulation).

> D.  Hunsinger fails to plead a violation of 47 C.F.R. § 64.1200(d).

In Count III of his Complaint, Hunsinger alleges Dynata violated 47 C.F.R. § 64.1200(d) by failing to have policies and procedures in place for complying with the TCPA's DNC provisions. Am. Compl. 23. Dynata moves to dismiss these under a similar theory they advanced to dismiss Hunsinger's 47 C.F.R. § 64.1200(c) claims.

Section 64.1200(d) provides that:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity.

47 C.F.R. § 64.1200(d). This provision then lists out "minimum standards" that must be met, including (i) a written policy, (2) training of telemarketing personnel on DNC list rules and regulations, (iii) recording and disclosure of DNC requests, (iv) identification of sellers and telemarketers to callers, (v) a policy for any affiliated persons or entities, and (vi) maintenance of DNC lists. *Id.* § 64.1200(d)(1)-(6). The regulations define telemarketing as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." *Id.* § 64.1200(f)(15).

However, these regulations only apply to "person[s] or entit[ies]" that engage in "telemarketing purposes." *Id.* § 64.1200(d). As discussed, the purported call and text from Dynata are not alleged to have been "for the purpose of encourage the purchase or rental of . . . property, goods, or services." *Id.* § 64.1200(f)(15). Dynata again correctly points out that no allegations by Hunsinger show he was encouraged to engage in any purchase, rental, or investment. Thus, the Court should also dismiss Hunsinger's claims under 47 C.F.R. § 64.1200(d).

### III.    State Law Claims

A.   <u>Hunsinger fails to plead violations of section 305.053 of the Texas Business & Commerce Code.</u>

In Counts IV and V of his Complaint, Hunsinger alleges Dynata violated section 305.053 of the TBCC. Dynata argues that Hunsinger's TBCC claims fail because he failed to plead a violation of the TCPA. Mot. Dismiss 26-27.

Section 305.053 provides a state private cause of action for a violation of the TCPA. Under this section:

(a)    A person who receives a communication that violates 47 U.S.C. Section 227, a regulation adopted under that provision, or Subchapter A1 may bring an action in this state against the person who originates the communication for:

(1) an injunction;

(2) damages in the amount provided by this section; or

(3) both an injunction and damages.

Tex. Bus. & Com. Code § 305.053(a). "Section 305.053 'proscribes only that conduct which is also prohibited by the TCPA. If no violation of the TCPA exists, there is no violation of' Tex. Bus. & Com. Code § 305.053(a)." *Alpha Cash Buyers II*, 2022 WL 562761, at *5 (quoting *Cherkaoui v. Santander Consumer USA, Inc.*, 32 F. Supp. 3d 811, 815 (S.D. Tex. 2014)).

For the reasons set forth above, Hunsinger has failed to state a claim under the TCPA with respect to the September 21, 2021 call or the June 3, 2022 text. His claims under section 305.053 should also be dismissed.

B. Hunsinger fails to plead common law invasion of the right to privacy
through intrusion upon seclusion.

Dynata also moves to dismiss Hunsinger's Count VII claim of intrusion upon seclusion.

Under Texas law, a claim for invasion of privacy in the form of intrusion upon seclusion requires a plaintiff to show: "(1) an intentional intrusion; (2) upon a plaintiff's seclusion, solitude, or private affairs; (3) that would be highly offensive to a reasonable person." *Doe v. Siddiqui*, 2018 WL 3956292, at *3 (N.D. Tex. Aug. 17, 2018) (Godbey, J.) (citing *Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250, 1276 (S.D. Tex. 1995)). As a "quasi-trespass tort," an intrusion upon seclusion claim "typically involves some sort of *physical* invasion of a person's property, such as spying, opening private mail, wire-tapping, or entering a person's residence." *Id.* (quoting *Doe v. United States*, 83 F. Supp. 2d 833, 840 (S.D. Tex. 2000)). "Texas courts have previously recognized repeated phone calls as actionable intrusions upon a person's seclusion or solitude based on the nature and frequency of the calls." *Id.* (quoting *Cherkaoui v. Santander Consumer USA, Inc.*, 2013 WL 12328769, at *2 (S.D. Tex. June 7, 2013)).

Hunsinger has not alleged any sort of physical invasion of privacy that rises to the level of "highly offensive to a reasonable person." *Id.* He makes conclusory statements that Dynata "harmed Plaintiff by intruding upon Plaintiffs seclusion" and "intentionally intruded on Plaintiffs solitude, seclusion, and private affairs by transmitting unsolicited telemarketing calls to his cellular phone." Am. Compl. 20,

22

24. But this formulaic recitation of the elements for his claim do not plausibly state how a single call and one text can raise to the level of "highly offensive." *Id.* (holding taking topless photos of an individual without knowledge or consent state a claim for invasion of privacy); *see Household Credit Servs., Inc. v. Driscol*, 989 S.W.2d 72, 84 (Tex. App.—El Paso 1998, pet. denied) (noting that a debt collector's multiple calls to plaintiff's work and home, at early and late hours throughout the day, after requests to stop could support an invasion of privacy claim). Accordingly, the Court should dismiss Hunsinger's intrusion upon seclusion claim.

    C.  <u>The Court should decline to exercise supplemental jurisdiction over Hunsinger's claims for violations of section 302.101 of the Texas Business & Commerce Code.</u>

The Court liberally construes Hunsinger's complaint with all possible deference due to a *pro se* litigant. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (holding that *pro se* pleadings are "to be liberally construed," and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers"); *cf.* Fed. R. Civ. P. 8(e) ("Pleadings must be construed so as to do justice."). Construing Hunsinger's amended complaint liberally, it appears that Hunsinger also alleges a claim under section 302.101 of the TBCC and maintains Dynata has "engaged in continuous and repetitive telephone solicitation . . . without obtaining a registration certificate from the Office of the Secretary of State." Am. Compl. 14-15. Dynata appears to have considered challenging this allegation as the section is mentioned in their table of authorities, *see* Mot. Dismiss, at vi, but it does not appear to be discussed on the

23

stated pages referenced and gives no basis for any potential dismissal. Therefore, Dynata does not challenge this allegation.

However, although the Court has supplemental jurisdiction over this state law claim under 28 U.S.C. § 1367, the Court should decline to exercise supplemental jurisdiction here because the claims that permitted original jurisdiction lack merit. *See* 28 U.S.C. § 1367(c)(3) (court may decline to exercise supplemental jurisdiction where it has dismissed all claims over which it has original jurisdiction). The state law claim should therefore be dismissed without prejudice to Hunsinger raising it in state court.

## IV. Damages

### A. Hunsinger fails to allege claims for treble damages under the TCPA and the TBCC.

Dynata claims that Hunsinger only makes conclusory allegations that the TCPA violations were willful and intentional and knowing and therefore Hunsinger's claims for treble damages should be dismissed. Mot. Dismiss 26.

"When a plaintiff succeeds on a TCPA claim, he can recover the greater of actual damages or $500 for each violation of the regulations." *204S6TH LLC*, 2022 WL 1110354, at *8. But the TCPA also provides that "[i]f the court finds that the defendant willfully or knowingly violated the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available [under § 227(b)(3)(B)]." 47 U.S.C. § 227(b)(3). The TBCC contains a similar provision

allowing treble damages for willful or knowing violations of the TCPA. Tex. Bus. & Com. Code § 305.053(c). "A willful or knowing violation does 'not requir[e] bad faith, but only that the person have reason to know, or should have known, that his conduct would violate the statute." *204S6TH LLC*, 2022 WL 1110354, at *9.

Hunsinger fails to allege any cognizable claim under the TCPA. This state law claim depends on the successful allegation of a TCPA claim. Accordingly, the Court should grant Dynata's motion to dismiss Hunsinger's claims for treble damages.

 B. <u>The Court should decline to exercise supplemental jurisdiction over Hunsinger's claims for civil penalties under section 302.302 of the Texas Business & Commerce Code.</u>

In Count IV of his amended complaint, Hunsinger requests civil penalties and attorneys' fees for violations of Chapter 302 of the Texas Business and Commerce Code. Texas law provides that "[a] person who violates [Chapter 302] is subject to a civil penalty of not more than $5,000 for each violation" and that "the party bringing the action also is entitled to recover all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees, and attorneys' fees." Tex. Bus. & Com. Code § 302.302(a), (d). Dynata did not seek to dismiss Hunsinger's section 302.101. However, for the same reasons stated previously, the Court should decline supplemental jurisdiction over the remaining state law claims, and they should be dismissed without prejudice to Hunsinger raising them in state court.

## Conclusion

For the reasons stated, the District Court should **GRANT** Dynata's Motion to Dismiss.

**SO RECOMMENDED.**

February 7, 2023.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Svcs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).